Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 191115-47343
DATE: September 30, 2021

ORDER

Entitlement to service connection for a bilateral eye disability is denied.

Entitlement to service connection for erectile dysfunction is denied.

Entitlement to service connection for hypertension is denied.

Entitlement to service connection for right lower extremity peripheral neuropathy is denied.

Entitlement to service connection for right upper extremity peripheral neuropathy is denied.

Entitlement to service connection for left lower extremity peripheral neuropathy is denied.

Entitlement to service connection for left upper extremity peripheral neuropathy is denied.

REMANDED

Entitlement to service connection for a headache disability is remanded.

FINDINGS OF FACT

1. The Veteran's glaucoma did not begin during service and is not otherwise related to an in-service injury or disease.

2. Refractive error

3. The Veteran's erectile dysfunction did not begin during service and is not otherwise related to an in-service injury or disease. 

4. The Veteran's hypertension was not shown as chronic in service and did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and the disability is not otherwise etiologically related to an in-service injury or disease. 

5. The Veteran's bilateral upper and lower extremity peripheral neuropathy was not shown as chronic in service and did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established; and the disability is not otherwise etiologically related to an in-service injury or disease. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a bilateral eye disability are not met. 38 U.S.C. §§ 1101, 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304. 

2. The criteria for entitlement to service connection for erectile dysfunction are not met. 38 U.S.C. §§ 1101, 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304. 

3. The criteria for service connection for hypertension are not met. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 5103, 5103A, 5107; 38C.F.R. §§3.102, 3.159, 3.303, 3.304, 3.307, 3.309.

4. The criteria for service connection for bilateral upper and lower peripheral neuropathy are not met. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1961 to March 1967.

The rating decision on appeal was issued in October 2019. In the November 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Hearing docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the Veteran's claims, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The Veteran has also appealed the issues of entitlement to service connection for post-traumatic stress disorder and a heart condition, as well entitlement to an increased disability rating for hearing loss to the Board. Those issues will be addressed in separate decisions. 

1. Entitlement to service connection for a bilateral eye condition is denied.

The Veteran claims to have a bilateral eye disability related to service.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004). 

Certain chronic diseases will be presumed related to service, absent an intercurrent cause, if they were shown as chronic in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if they were noted in service (or within an applicable presumptive period) with continuity of symptomatology since service that is attributable to the chronic disease. 38U.S.C. §§1101, 1112, 1113, 1137; 38C.F.R. §§3.303, 3.307, 3.309. Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013).

The Veteran testified that he has a diagnosis for glaucoma and that he started wearing eyeglasses shortly after separating from service. The Veteran is competent to testify that a doctor has diagnosed him with glaucoma and a refractive error, and there is no evidence to contradict the Veteran's report of a current diagnosis for glaucoma and a refractive error. 

Regarding glaucoma, the Veteran asserted generally in his July 2019 claim form that his glaucoma began in 1967 and is related to service as a paratrooper. The Veteran in this case is not competent to opine that any in-service symptoms were related to his current glaucoma diagnosis, or to provide a nexus opinion between his service and his glaucoma. The issue is medically complex, as it requires knowledge of the interaction between multiple organ systems in the body. Therefore, it is outside the competence of the Veteran in this case because the record does not show that he has the skills or medical training to make such a determination. Jandreau, n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). The Veteran has also not provided any statements from any medical professionals or other competent evidence indicating that there is a link between his glaucoma and service. In fact, the Veteran testified that no doctor has told him that his disabilities are related to his service. 

Furthermore, the Board finds that the Veteran's reports in his claim form that his symptoms began in 1967 are not credible. Vision problems can be a symptom of glaucoma. See 38 C.F.R. § 4.79, General Rating Formula for Disease of the Eye, Diagnostic Codes 6012, 6013. The competent medical evidence of record contradicts the Veteran's contention that his symptoms began during service. Although the Veteran's Service Treatment Records (STRs) show that in July 1961, January 1962, and September 1964 Reports of Medical History, the Veteran reported that he wore glasses, the Veteran denied wearing glasses in his September 1967 Report of Medical History, and all the Reports of Medical Examination of record show that the Veteran had uncorrected vision of 20/20 and do not show that the Veteran required vision correction. The Board finds the Veteran's reports that he wore glasses during or before service, or his testimony that he got prescription eyeglasses shortly after service to be not credible as they are not supported by the contemporaneous evidence of record. Finally, the Veteran testified that no doctor has told him that his glaucoma is related to his active-duty service. Therefore, service connection must be denied for glaucoma.

To the extent that the Veteran is seeking service connection for a refractive error, in the absence of a superimposed disease or injury, service connection may not be allowed for congenital defects or refractive errors of the eyes, even if visual acuity decreased in service, as these are not diseases or injuries within the meaning of applicable legislation relating to service connection. VA regulations specifically prohibit service connection for either a congenital defect or a refractive error of the eye unless such a defect was subjected to a superimposed disease or injury that created additional disability. See VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (July 18, 1990). There is no other superimposed disease or injury apart from glaucoma to which the refractive error may be attributed. Here, the Veteran does not report, and the evidence does not otherwise show, that an event or trauma occurred in service which created additional refractive error. Therefore, service connection for a refractive error must also be denied. Thus, in the absence of some event or trauma, a refractive error is a constitutional or development abnormality for which compensation benefits may not be authorized. 38 C.F.R. §§ 3.303(c), 4.9.

The Veteran has not been afforded a VA examination for this disability. Under McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006), in disability compensation (service connection) claims, VA must provide a VA medical examination when there is: (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability; and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies; and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability; but (4) insufficient competent medical evidence on file for the VA to make a decision on the claim. Here, the standards of McLendon are not met as there is no credible and competent evidence indicating his glaucoma may be associated with an in-service event, injury, or disease. The Board reiterates that Veteran also testified that no doctor has told him that any of his claimed disabilities are related to his active-duty service. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for a bilateral eye disability and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 

2. Entitlement to service connection for erectile dysfunction is denied.

The Veteran testified that he has a diagnosis for erectile dysfunction which he believes is related to his active-duty service. 

The Veteran testified that he has a diagnosis of erectile dysfunction. The Veteran is competent to testify that a doctor has diagnosed him with erectile dysfunction. Jandreau.

Although the Veteran believes that his erectile dysfunction is related to his active-duty service, the Veteran is not competent to provide a nexus opinion regarding this issue. The issue is medically complex, as it requires knowledge of the interaction between multiple organ systems in the body. Therefore, it is outside the competence of the Veteran in this case because the record does not show that he has the skills or medical training to make such a determination. Jandreau. The Veteran has also not provided any statements from any medical professionals or other competent evidence indicating that there is a link between his erectile dysfunction and service. In fact, the Veteran testified that no doctor has told him that his disabilities are related to his service. 

Furthermore, the Board finds that the Veteran's report in his July 2019 claim form that his symptoms began in 1967 is not credible. First, the Veteran indicated that this disability, along with 14 others, were due to his service as a paratrooper in 1967. The Veteran did not explain how erectile dysfunction was consistent with the conditions or hardships of being a paratrooper. Moreover, his representative asserted during the 2021 Board hearing that the Veteran's erectile dysfunction did not start during service. The Veteran did not contradict her. The medical evidence of record does not support that the Veteran's symptoms of erectile dysfunction began during service. Although the Veteran reported in his July 2019 claim form that his erectile dysfunction began in 1967 and was related to his military occupation as a paratrooper, the Veteran's STRs do not show complaints or treatment for erectile dysfunction and, other than a reference in his claim form to his service as a paratrooper, the Veteran has not identified an in-service event, injury, or disease which caused his erectile dysfunction, so he has not met the second prong of Shedden. Finally, the Veteran testified that no doctor has told him that his erectile dysfunction is related to his active-duty service. Therefore, service connection must be denied for erectile dysfunction.

The Board recognizes that the Veteran has not been afforded a VA examination for this disability but finds that the standards of McLendon are not met in this case as there is no credible or competent evidence indicating any link between his hypertension and an in-service event, injury, or disease. The Board reiterates that Veteran also testified that no doctor has told him that any of his claimed disabilities are related to his active-duty service. 

Finally, the Veteran's representative argued at the hearing in this matter that his erectile dysfunction is related to medications he takes for disabilities for which he believes service connection is warranted. The Veteran did not offer any testimony that his doctors had indicated that was the case. Whether a medication may cause or aggravate erectile dysfunction is a complex medical question involving how the medication effects the body internally, such that a lay person could not observe the effects via the five senses. At best, the representative's argument is mere speculation unsupported by any evidence. Moreover, the theory of secondary service connection was not raised before the AOJ, and no evidence, lay or medical, to support this theory was before the AOJ. Therefore, there is no duty for VA to obtain a medical examination or opinion regarding this theory of entitlement. 38 U.S.C. § 5103A(e)(2).

Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for erectile dysfunction and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 

3. Entitlement to service connection for hypertension is denied.

The Veteran has a current diagnosis which he claims began in service. He testified that he was diagnosed with hypertension during service, and that he has had the disability ever since service.

For VA purposes, hypertension is defined as diastolic blood pressure of predominantly 90mm or greater, which must be confirmed by readings taken two or more times on at least three different days. 38 C.F.R. § 4.104, Diagnostic Code 7101. Isolated systolic hypertension is defined as systolic blood pressure of predominantly 160mm or greater with a diastolic blood pressure of less than 90mm. Id. 

The Board finds that the Veteran has a current diagnosis for hypertension, as the Veteran is competent to report his current diagnosis, and there is no evidence to contradict the Veteran's report of his current hypertension diagnosis. 

The Board also recognizes that the Veteran is competent to report that he was diagnosed with hypertension during service. However, the Board finds that the Veteran's report of an in-service diagnosis for hypertension is not credible as the competent medical evidence of record contradicts the Veteran's assertion that he was diagnosed with hypertension during service. The Veteran's STRs do not show diastolic blood pressure of predominantly 90 mm or greater, or systolic blood pressure of predominantly 160 mm or greater with a diastolic blood pressure of less than 90 mm. Instead, the Veteran answered in the negative for any complaints of high or low blood pressure in the Report of Medical History accompanying his September 1964 reenlistment examination and his February 1967 separation examination. The Veteran's current statements conflict with his contemporaneous statements that he did not have high blood pressure. The Board finds the Veteran's testimony lacks credibility. The Board places great weight on the Veteran's contemporaneous statements which are in agreement with the Veteran's service treatment records. Therefore, the Board finds that the Veteran did not have any symptoms of hypertension during service and was not diagnosed with hypertension during service. 

As hypertension is a chronic disease under 38 C.F.R. § 3.309, the Board has considered whether presumptive service connection can be granted. However, the competent medical evidence of record also does not show that the Veteran had any symptoms of hypertension or was diagnosed with hypertension within one year of his service. Therefore, presumptive service connection is not warranted for this disability.

The Board further finds that the Veteran is not competent to provide a nexus opinion regarding the relationship between his service and his current hypertension diagnosis. The issue is medically complex, as it requires knowledge of the interaction between multiple organ systems in the body. Therefore, it is outside the competence of the Veteran in this case because the record does not show that he has the skills or medical training to make such a determination. The Veteran has also testified that no doctor has told him that his disabilities are related to his service. 

The Board recognizes that the Veteran has not been afforded a VA examination for this disability but finds that the standards of McLendon are not met in this case as there is no credible or competent evidence indicating any link between his hypertension and an in-service event, injury, or disease. The Board reiterates that Veteran also testified that no doctor has told him that any of his claimed disabilities are related to his active-duty service. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for hypertension and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

4. Entitlement to service connection for right lower extremity peripheral neuropathy is denied.

5. Entitlement to service connection for right upper extremity peripheral neuropathy is denied.

6. Entitlement to service connection for left lower extremity peripheral neuropathy is denied.

7. Entitlement to service connection for left upper extremity peripheral neuropathy is denied.

The Veteran claims that he has a diagnosis of peripheral neuropathy in all four extremities which began during service or is otherwise related to service. 

The Board finds that the evidence is at least in equipoise that the Veteran has neurological abnormalities in all four extremities. However, the Board finds that the preponderance of the evidence does not demonstrate that the Veteran's peripheral neuropathy began during service or within the applicable presumptive period and is not otherwise related to his service.

The Veteran testified that he experienced tingling and numbness in his fingers and toes while he was stationed in Colorado, and that he sought medical treatment for his tingling and numbness during service. Although the Veteran is competent to report the symptoms he experienced during service, the Board finds that the Veteran's reports of experiencing numbness and tingling during service are not credible as his reports are contradicted by his STRs. The Veteran's STRs were silent for complaints related to symptoms or a diagnosis for neuropathy. The Veteran's neurological system was found to be normal in his February 1967 separation examination report. The Veteran reported having cramps in the Report of Medical History accompanying his February 1967 separation examination, but not any complaints of numbness or tingling in his upper or lower extremities. 

Furthermore, as discussed above, the Veteran is not competent to opine that the symptoms he reportedly experienced during service are related to his current peripheral neuropathy. The issue is medically complex, as it requires knowledge of the interaction between multiple organ systems in the body. Therefore, it is outside the competence of the Veteran in this case because the record does not show that he has the skills or medical training to make such a determination. Jandreau.

Finally, the Veteran testified that no doctor has told him that any of his claimed disabilities are related to his active-duty service. The Veteran's private and VA medical records show treatment for his complaints, showing possible lower extremity radiculopathy and carpal tunnel syndrome. Regarding the etiology of his neuropathy, a March 2004 letter from Dr. D.D. shows that the Veteran complained of "incapacitating left sided hip and thigh pain" which he opined "appears to be a radicular type pain likely from lumbar degenerative disease." An April 2004 treatment record from M.W., a physical therapist, diagnosed the Veteran with lumbar spine pain with bilateral radiculopathy, and in approximately May 2004, Dr. P.N., a neurologist, conducted an EMG and nerve conduction study on the Veteran's lower extremities and opined that the Veteran had peripheral neuropathy in his lower extremities bilaterally, but noted that the etiology of his peripheral neuropathy is unclear. The competent and credible evidence of record does not indicate that the Veteran's peripheral neuropathy is related to his active-duty service.

The Board recognizes that a January 2019 record notes that the Veteran has sensory and motor neuropathy and is seeking treatment from private medical providers. Although the recent private medical records are not included in the evidence currently before the Board, the Veteran did not provide these records during the applicable evidence window, and no duty of assist error occurred as the Veteran did not request that VA assist him in obtaining those records.

The Board recognizes that the Veteran has not been afforded a VA examination for this disability but finds that the standards of McLendon are not met in this case as there is no credible or competent evidence indicating any link between his peripheral neuropathy and an in-service event, injury, or disease, including his reported leg cramps. The Board reiterates that Veteran also testified that no doctor has told him that any of his claimed disabilities are related to his active-duty service. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to service connection for peripheral neuropathy and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 

REASONS FOR REMAND

Entitlement to service connection for a migraine headache disability is remanded.

The Veteran claims that he has a headache disability related to his active-duty service, and that he had headaches during service, and that his headaches have been continuous since service. He also reported on his claim form that his headache symptoms began in 1967. He has since asserted that his symptoms began after he suffered a spider bite during service.

Here, as the Veteran has provided competent evidence that his headache symptoms began during service and have continued ever since service, which is not contradicted by competent evidence of record, the Board finds that an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service, but that insufficient competent medical evidence on file for the VA to make a decision on the claim. Therefore, VA has a duty to schedule the Veteran for a VA examination before this claim can be adjudicated. 

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination for his claimed headache disability. The examiner must review the claims file.

If a diagnosis cannot be provided but the Veteran's condition manifests in symptoms that cause functional impairment, then the examiner should consider them a "disability" for the purpose of providing the requested opinions below.

The examiner is asked to provide a response to the following:

a) Is the Veteran's headache disability at least as likely as not related to service, including his reported in-service spider bite? 

b) Is it at least as likely as not that the Veteran's headache disability either (1) began during active service, (2) manifested within one year after discharge from service, or (3) was noted during service with continuity of the same symptomatology since service?

Provide a rationale to support the opinions. 

In providing the requested opinion, consider the Veteran's description of his/her in-service injury and symptoms as well as his post-service symptoms. If there is any medical reason to accept or reject the proposition that the Veteran's reported injury and symptoms in service and thereafter represented the onset of his/her current disability, this should be noted. Stated another way, do the Veteran's reports about his symptoms align with how the currently diagnosed disability is known to develop or are the Veteran's reports generally inconsistent with medical knowledge or implausible?

 

 

J. B. FREEMAN

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board A. Boal, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.